WETMORE and others *vs.* MIDMER, sheriff, and another.

Where a testator made his executors trustees of all property, estate or interests, given or devised by his will (excepting a life estate in the mansion-house devised to his son), with authority to sell and convey all or any part of his real estate, the power to sell prevails over the prior devises; and an execution levying on such estate and interests, issued after the same were sold and conveyed by the executors, upon a judgment recovered before such sale and conveyance, is subordinate to the power of sale and can have no effect on the property.

---

This cause was argued before the Hon. Joseph F. Randolph, one of the masters of the court, sitting for the Chancellor, on demurrer to a bill for injunction.

*Mr. Scofield,* in support of the demurrer.

*Messrs. L. & A. Zabriskie,* for complainants, contra.

THE MASTER.

John Tonnele, late of Hudson county, died seized in fee of a considerable amount of real estate, situate in said county, amongst which were the premises in question. Prior to his death he made and duly executed his last will and testament, which was duly proved by his executors. By it he devised certain of his real estate to his wife for life in lieu of dower; giving also to his son Laurent John Tonnele a life estate in his mansion-house and part of the grounds belonging thereto, subject to the life estate of his widow; the rest of his estate was divided amongst his children equally, so that each should receive only the income of his or her share during life, and at death his or her share should go to the lawful issue.

The seventh section of the will provides that "in order more fully to carry out the object of this my will, I do hereby appoint and declare my executors, hereinafter named, to be trustees of all property, estate, or interest herein given or devised to any of my children, or that any of my children may be entitled to by virtue of any provision in this my last will, during the life of such child (excepting the life estate in the mansion-house devised to my son), with full power to retain all such property in their hands unsold and undivided, until after the year eighteen hundred and sixty-seven; and I do authorize my said executors to sell and convey all or any part of my real estate and all real estate that may be purchased by them," &c., &c.

The bill of complaint sets forth the provisions of the will, and its probate by the executors on the 11th day of December, 1852. That afterwards the executors sold to Robert C. Bacot, by virtue of the power given in said will, for the sum of $50,000, the said lands described in said will as the mansion-house of said John Tonnele, deceased, and included in the map mentioned in said bill; which property was subsequently cut up into numerous lots and streets, and the lots, or a large portion of them sold to the several persons named in said bill, the owners of which had built houses

and made improvements thereon; all claiming through the first purchase of Robert C. Bacot.

The bill also sets forth that on or about the 22d day of November, 1861, James Wallace recovered a judgment in the Supreme Court of this state against said Laurent John Tonnele and one Timothy Dergan for the sum of $759.33 for his damages and costs, and afterwards at the Term of February, 1869, procured an *alias* to be issued out of said court to the sheriff of the county of Hudson, by whom it was received, and the property levied on and advertised to be sold at sheriff's sale; that the property so advertised was all held under and by virtue of the said deed made by said executors to said Robert C. Bacot, and that it had become of great value, equal to $250,000. The bill insists that the claim by and through said deed to Mr. Bacot is good and valid, and that there was no valid lien on said premises by reason of said judgment and execution.

The bill also alleges that the sheriff intends and will sell the premises if not restrained by this court, and that such sale will make no title to the same, but be a mere cloud over the property, injurious to the sale thereof at any future time. To avoid which an injunction is prayed for and such other relief as might be equitable and just. The injunction was granted according to the prayer of the bill, and commanded and enjoined the defendants, John H. Midmer, sheriff of the county of Hudson, and James Wallace, that they do absolutely desist and refrain from further proceedings to sell, or from selling, under the execution issued out of the Supreme Court of the state of New Jersey at the suit of James Wallace against Laurent John Tonnele and Timothy Dergan, any part of the tract of land containing nine acres and fifteen hundredths of an acre, known as the homestead lot, late of John Tonnele, deceased, and situate in the city of Hudson, in the county of Hudson, in this state, except lots numbered forty-eight, forty-nine, fifty, fifty-one, fifty-two, fifty-three, seventy-three, seventy-four and seventy-one, as laid down on the map of said pro-

perty made for Robert C. Bacot in 1864, which lots are said to be owned by Francis W. Mitchell and Isaac Day.

To this bill defendants have put in a demurrer, and several causes of demurrer are assigned and set forth. The point particularly insisted on is as to the power given by the will to sell that part of the mansion-house and grounds devised for life to the son, Laurent John Tonnele, and the effect that Wallace's judgment against Tonnele and Dergan, which is prior to the deed to Bacot, and the execution thereon, which is subsequent to the deed, may have upon the title to Bacot and his assigns. The first point was decided in *Bacot* v. *Wetmore,* 2 *C. E. Green* 250, by Chancellor Green, whose view I adopt without hesitation as the only correct view that can be taken of the question. The subsequent power in the will to the executors to sell all or any of the lands devised is in broad, decided language, without exception, and must therefore prevail over the prior devises, which must be taken as subject to this power and its execution. This being the case, it follows that Wallace's judgment and execution must be subordinate to the absolute power of sale vested in the executors. The sale by the sheriff can only be made, if at all, subject to that power, and as that power has been exhausted prior to the issue or levy of the execution, the execution itself can have no effect on the property.

The demurrer, therefore, must be overruled, with costs.